## MAXWELL v. TOLLY.

Under the charter of the city of Anderson, the mayor has no power to hear and determine protests as to an election held in that city under the local option law, his duty being simply to declare the result as certified to him by the managers of election.

This was an application to this court for a writ of mandamus. The opinion states the case.

*Mr. G. E. Prince,* for petitioners.

*Messrs. H. G. Scudday* and *E. B. Murray,* contra.

February 4, 1887. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. An election was held in the

city of Anderson, in this State, on the first day of December, 1886, under what is known as the local option law, to determine whether or not license should be granted in said city for the sale of spirituous and malt liquors during the years 1887 and 1888. The managers made their return to the respondent, mayor, on December 2, 1886. Before this return was opened, however (as it is alleged in the petition), the relators presented to be filed a written protest, wherein they claimed that the election was invalid upon several grounds therein stated, to wit: "That the published notice of said election was insufficient; the registration of voters was illegal; that the polls were closed an hour before the time prescribed in the charter and that fixed by the published notice; the ballot box was opened before the closing of the polls, and a voter allowed to withdraw a ballot and deposit another; and for other irregularities." The mayor, after hearing argument upon the question whether it was within his power to hear and consider the protest, determined that he had no such authority, and he thereupon proceeded to announce the result, "ascertained from a certified talley sheet returned by the managers, having in his possession a return of the full list with the proper certification thereto, which corresponded [as he states] with the talley sheet."

Upon these facts, the relators filed the petition herein, praying the writ of mandamus, to be directed to the respondent, mayor, "commanding him to hear and judicially pass upon the issues of fact and of law raised by the protest." There seems to be no dispute about the facts, and the only question, therefore, for us is whether the respondent, mayor, before announcing the result of the election, should have considered and determined the protest of the relators.

The law applicable to this election, and which must determine the question raised, is found in section 8 of the local option act (17 *Stat.*, 895)[1] and in section 4 of the charter of Anderson (17 *Stat.*, 974). The first provides, "that all elections under this act shall be conducted according to the laws now governing municipal elections of the city, town, or village in which the election shall be held." The second provides, that "when the polls are closed, the managers shall forthwith proceed to count the votes and make

---

[1] General Statutes, section 1753.—Reporter.

a statement of the whole number of the votes cast in such election, together with the number cast for each person voted for as alderman, and shall transmit a certificate of the same in a sealed envelope, with the certificates of registration taken up by them in such election, to the mayor of said city, and if there be no mayor, then to the clerk of the court for Anderson County. And the said mayor or clerk of court shall immediately, upon the receipt of the report of the managers, open and publish the same by announcing the whole number of votes cast in the election and the number for each person voted for as mayor and as aldermen. He shall thereupon declare the person receiving the highest number of votes for mayor duly elected to that office, and the person receiving the highest number of votes for aldermen, in number equal to the number of aldermen to be chosen, duly elected to said office," &c.

Now, the local option act is the source from which the right to hold the election in question was derived, and its eighth section quoted above directs that such election should be conducted according to the laws now governing municipal elections of the city, town, or village in which the elections shall be held, so that the question involved must be decided entirely upon the terms of section 4 of the charter, *supra*. Is there anything in that section which either expressly or impliedly gives to the mayor the power to hear and judicially determine a protest? There is certainly no express grant of such power. Can it be impliedly inferred? One portion of the section refers entirely to the managers and prescribes their duties, the other refers to the mayor and prescribes his duties. The two are separate and distinct, and they are to be performed independently of each òther. Upon the closing of the polls, the managers are to count the votes and make a statement, a certificate of which is to be transmitted, with the certificates of registration, to the mayor, who, upon receipt thereof, is to open and publish the same by announcing, &c.—the duties of the mayor beginning, as it seems, at the receipt of the managers' report, and confined to the ministerial act of opening said report and of announcing therefrom the number of votes cast and for whom, from which he is to declare the result.

There is nothing in these duties required of the mayor, to the

proper performance of which it is necessary that he should go behind the report of the managers and examine into the manner in which they may have discharged their duties.    The act seems to presume that the managers will correctly discharge their duties, or, at least, so far as the mayor is concerned, the report of the managers is conclusive upon him.    He is required to do nothing until this report is made, and when made, it is the basis of his whole action.    He must take it as it comes, if it is made out as the act prescribes and reaches him in accordance therewith, in reference to which there is no contest here, as we understand. There, then, being no express power given to the mayor to hear protests in these elections, and nothing in the duties required of him impliedly demanding the exercise of such a power, however necessary it might be that such power should exist somewhere, and perhaps in the mayor, we have no alternative but to dismiss the petition, as our province is not to enact law, but to declare it.

We do not think that the case of *Blake* v. *Walker*, 23 *S. C.*, 517, in any way aids the relators.

The case against the respondent not being sufficient, in our opinion, to authorize the writ of mandamus under any circumstances, it has not been necessary to consider the questions of law raised, applicable to the issuance of this writ—such as, whether the relators have any adequate remedy other than said writ, &c.

It is ordered, that the petition be dismissed.